WOOL NOVELTY CO., INC. *v.* UNITED STATES

No. 7600.—Invoices dated Shanghai, China, March 21, 1941, etc.
Certified March 21, 1941, etc.
Entered at New York, N. Y., April 24, 1941, etc.
Entry Nos. 758204; 720384.

(Decided June 16, 1948)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster* and *Guy Gilbert Ribaudo*, special attorneys), for the defendant.

TILSON, Judge: The two appeals listed above, which were consolidated for trial, involve the proper dutiable values of cotton and wool tapestries, exported from Shanghai, China, in March and September 1941. The plaintiff confines its contention to the claim that certain amounts stated on the invoices to be buying commissions are not properly a part of the dutiable values of the merchandise and therefore should not have been included as such by the appraiser. In appeal No. 141784–A the commission is 10 per centum, and plaintiff's claim is limited to the merchandise contained in cases 825 to 828, inclusive. In appeal No. 145879–A the commission is only 5 per centum and apparently covers all the merchandise on the invoice.

One witness testified for the plaintiff that he has been the general buyer for the plaintiff for the past 20 years; that at various times he has been in the Shanghai district of China; that he personally made arrangements with H. L. Gibson & Co. of Shanghai, China, relative to the purchase of the merchandise covered by appeal No. 141784–A and that he also made arrangements with Ling & Wang of Shanghai for the purchase of the merchandise covered by appeal No. 145879–A; that both firms acted as buying agents for the plaintiff herein, receiving their orders and placing them with various manufacturers; and that said firms supervised the manufacture of the tapestries, reported the relative values of the component materials on the in-

voices, examined the tapestries upon delivery of same to them by the respective manufacturers, inspected them for proper marking to comply with the American customs requirements, and attended to the proper packing and shipping of the merchandise, together with the preparation of the necessary documents therefor.

The witness further testified in appeal No. 141784–A that as compensation H. L. Gibson & Co. "were to receive 10 per centum of the first cost of this merchandise, plus packing charges, cartons, paper, cloth used in wrapping the bundles, and also a charge for stamping 'Made in China' on each piece of tapestry, and our particular pattern number, if the manufacturer was unable to do it or did not do it properly."

With reference to the tapestries covered by appeal No. 145879–A, the witness testified that the commission in that case was only 5 per centum for the following reasons:

That particular invoice does not cover goods which we bought generally from Ling and Wang. That also represented a lot of market goods that I bought personally from the Junkee Company. That was not merchandise that Ling and Wang Company had manufactured for us through any of their manufacturers. That was a market lot of goods offered to me by the Junkee Company, and which he turned over to Ling & Wang to act as shippers, and examiners, and packers, and that is why I believe they only charged a five per cent commission instead of 7½ or 10 per cent. That was a lower rate of commission due to the fact they had nothing to do with the merchandise, except they received it, packed it, examined it, etc.

The record also shows that the banking to cover these transactions was all done through said commissionaires, for whom letters of credit were established, and who paid the manufacturers upon delivery of the goods in compliance with the orders.

The witness also testified that he was familiar with the market conditions for this merchandise in Shanghai on or about the dates of exportation by reason of being in frequent contact with the commissionaires who received quotations from the manufacturers, and that the unit invoice prices correctly represent the prices at which the merchandise was freely offered for sale to all purchasers in the ordinary course of trade in the usual wholesale quantities, and that the merchandise was not sold for home consumption.

It is made clear from the record in this case that the commissions of 5 per centum and 10 per centum, shown on the invoices covered by these two appeals, were paid by the purchaser of the merchandise to agents or commissionaires for services performed by them in the procurement of the merchandise and fall squarely under the heading of purchasing commissions. A purchasing commission, charged for the handling of merchandise, is not a proper part of dutiable value, as announced by our appellate court in *Stein* v. *United States*, 1 Ct.

Cust. Appls. 36; *United States* v. *Bauer*, 3 Ct. Cust. Appls. 343; *Vandiver* v. *United States*, 6 Ct. Cust. Appls. 80; and *United States* v. *Kresge*, 26 C. C. P. A. 349.

Upon the facts in this case, following the authorities cited above, I hold that the respective purchasing commissions, hereinbefore set out, do not form any part of the dutiable values of the merchandise, and should not have been so included by the appraiser.

The proper dutiable export value of the merchandise contained in cases 825 to 828, inclusive, covered by appeal No. 141784–A is the appraised value, less 10 per centum purchasing commission, and the proper dutiable export value of the merchandise covered by appeal No. 145879–A is the appraised value, less 5 per centum purchasing commission. Judgment will be rendered accordingly.