(Reap. Dec. 9057)

MEIER & FRANK CO., INC., v. UNITED STATES

Entry No. 1385.

(Decided January 23, 1958)

*Lawrence & Tuttle (George R. Tuttle* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Joseph E. Weil, Mollie Strum,* and *Samuel D. Spector,* trial attorneys), for the defendant.

WILSON, Judge: The plaintiff imported certain wool rugs from China in 1950, which were invoiced and appraised at 29 cents per square foot, plus 10 per centum, plus packing, the appraiser having eliminated as nondutiable certain miscellaneous charges amounting to $398.58 accrued against the goods from the time of factory purchase to shipment at the point of exportation. The plaintiff attacks the 10 per centum item in the appraisement upon the ground that it represents a buying commission which is nondutiable. This item was included in the entered value "under certificate of pending appraisement," a practice then permissible, the circumstances amounting to an entry under duress.

The defendant contends that the importer has failed to make out a *prima facie* case. On the other hand, the plaintiff argues that it has challenged but one item of the three parts constituting the total appraised value and has not attacked the complete appraisal, and, therefore, the presumption in favor of the appraisal as a whole is not affected. It is further asserted by the importer that if the 10 per centum under attack is, in fact, a buyer's commission, it is not dutiable.

That one element of the appraised value of an importation may be attacked without destroying the correctness of the other items making up the total appraisement is too clearly established by the decided cases to admit of any doubt. See *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371, and *United States* v. *Schroeder & Tremayne, Inc., James H. Rhodes & Co.*, 41 C. C. P. A. (Customs) 243, C. A. D. 558.

It seems equally clear, according to the decided cases, that a buying commission may not properly be included in the dutiable value of goods. In the case of *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007 (19 Treas. Dec. 1059), the question involved the validity of an appraisement proceeding wherein it was alleged by the importer that a commission of 2½ per centum on certain woolens and worsteds imported from England was improperly assessed for duty. From the evidence, the court found that a certain commissionaire, to whom the involved commission was paid, received the goods after they were manufactured and finished, compared them with certain purchase samples, packed, and shipped the goods, etc. Under the facts of the case, the court held:

* * * The commission would seem to be a service connected with the fulfillment of the contract, rather than a performance of any of its terms. It entered into the cost of the goods to the importer but did not become a part of their actual market value. We think the record fully supports the finding of the Board of General Appraisers that the 2½ per cent was a commission, pure and simple, and in no wise entered into the actual market value of the goods. It was therefore a nondutiable item. Muser v. Magone (155 U. S., 240); United States v. Passavant (169 U. S., 16); United States v. Herman (91 Fed. Rep., 116); United States v. Kenworthy (68 Fed. Rep., 904).

To the same effect, see *United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T. D. 40958, and *United States* v. *Alfred Kohlberg, Inc.*, 27 C. C. P. A. (Customs) 223, C. A. D. 88, wherein it was held that a charge paid by an importer to a commissionaire for certain services rendered in buying and procuring goods from others constituted no part of the value of the merchandise for appraisement purposes.

The United States Customs Court, in a situation similar to the one now before us, held the commission charges were nondutiable. *The American Import Co.* v. *United States*, 34 Cust. Ct. 444, Reap. Dec. 8388. It is true that, in *The American Import Co.* case, *supra*, a stipulation entered into between the parties limited the issue to the

question of whether a commission involved, under circumstances practically identical to the instant case, was a dutiable item. After considering the applicability of an affidavit made by the so-called buying agent, reciting facts substantially the same as those set forth in an affidavit (plaintiff's exhibit 1 herein) of one J. C. Liu, general manager of Chen Te Hsing, the commissionaire in the case at bar, the same affiant as appeared in the cited case, the court, in *The American Import Co.* case, *supra*, held, page 449, that the recitals therein made "are evidentiary facts" and that the involved commission was paid to one who acted as a commissionaire and not as a seller, citing the *Stein* and *Case* decisions, *supra*.

It is conceded that the merchandise under consideration was invoiced and appraised at 29 cents per square foot, plus 10 per centum, plus packing. The total appraised value of the rugs on the basis of 29 cents per square foot was $10,508.15. The 10 per centum added to the appraised value amounted to $1,050.82, or exactly 10 per centum of the net value of the merchandise in question. This commission is the only item in the appraised value which is challenged. On both the consumption entry and the consular invoice the $1,050.82 item is described as a 10 per centum buying commission. The consular invoice was received in evidence, over the objection of counsel for the Government. The plaintiff then called Allen Eising Meier as a witness and concluded its case by introducing in evidence the affidavit of J. C. Liu of Hong Kong, heretofore referred to. The Government asserted that the plaintiff's evidence was insufficient to overcome the presumption of correctness attaching to the official appraisal and, therefore, rested its case upon that presumption. The determination of this case, therefore, hinges upon the question of whether the evidence submitted by the plaintiff is adequate to overcome the alleged presumption of correctness and establish that the challenged item of 10 per centum was, in fact, a buying commission and, as such, nondutiable.

It appears that, throughout the history of Customs Court litigation, there has been considerable controversy as to the admissibility of invoices in evidence, as to their evidentiary weight, if and when admitted, and what consideration is to be given to the official papers in a case, including the invoices, when not actually offered in evidence. Some confusion, it appears, has arisen from the failure of litigants to discriminate between classification and reappraisement cases. This situation is referred to by the appellate court in the case of *W. T. Grant Company* v. *United States*, 38 C. C. P. A. (Customs) 57, 62, C. A. D. 440, wherein the issue involved the classification of "cotton fabric and rayon gloves":

* * * By statute, Congress has made admissible certain secondary evidence in reappraisement cases, 28 U. S. C. 2633 [derived from Sec. 501 of the Tariff Acts

of 1922 and 1930; cf. 19 U. S. C. 1402 (b)], *but that liberalizing provision has no applicability to classification cases.* [Italics supplied.]

The court then goes on to point out:

The invoice, of course, as part of the official file of papers in a protest case, always remains part of the official record in the case, 19 U. S. C. 1515, 19 CFR 17.3 (and so in reappraisement cases, 19 U. S. C. 1501 (a), 19 CFR 17.7; 19 U. S. C. 1402 (b); see 28 U. S. C. 2633), but when it is sought to introduce the invoice into evidence as tending to prove the truth of the matters recited therein, it must be offered to the court as evidence for that purpose. The normal rules of evidence then apply, and the opponent of the offeror is entitled to object to the admission of the invoice for such purpose if the circumstances attendant upon its offer characterize it as hearsay evidence which does not come within any of the common law or statutory exceptions to the hearsay rule. *Borgfeldt & Co.* v. *United States*, supra.

In *United States* v. *Bloomingdale Bros. & Co.*, 10 Ct. Cust. Appls. 149, T. D. 38400, involving the classification of certain cotton cloth, it was stated:

We must conclude, therefore, that customs laws have always contemplated that invoices in due form made in accordance with statutory requirements and not discredited or impeached were, in the absence of other proof, admissible as some evidence of the facts stated therein, and that the administrative practice and the judicial tribunals have conformed to that interpretation.

It was pointed out, however, in the *W. T. Grant Company* case, *supra*, that no objection was made to the introduction of the invoice in the *Bloomingdale Bros.* case, *supra*, and that the only question was concerning the correctness of the descriptions in the invoice. However, there is nothing in the decision in the *Bloomingdale Bros.* case, *supra*, to indicate that the invoice would not have been admitted had objection been made. I do not consider the *W. T. Grant Company* case, *supra*, which the Government has cited in support of its position, applicable or controlling in the instant case.

In *United States* v. *Sabin*, 12 Ct. Cust. Appls. 520, T. D. 40731 (a reappraisement case), at page 523, the court held:

The price paid for the merchandise imported as shown by the invoice was some evidence of market value.—Lloyd Co. *v.* United States (9 Ct. Cust. Appls. 280, 283; T. D. 38217); United States *v.* Bloomingdale (10 Ct. Cust. Appls. 149–154; T. D. 38400). * * * No evidence was submitted by the Government showing or tending to show that the invoice price did not include the sales tax or that the discounts claimed were not regularly allowed.

In *United States* v. *Fisher Scientific Co.*, 26 C. C. P. A. (Customs) 278, C. A. D. 27 (a reappraisement case), the court referred to a statement in the opinion of the appellate division of the Customs Court to the effect that—

The consular invoices are verified by the affidavit of the exporter and therefore constitute some evidence of the facts stated therein. We, therefore, find that there is a home market value in Germany for the products involved, but that the same is no higher than the export value.

In the case of *United States* v. *American Accordions, Inc.*, 5 Cust. Ct. 475, Reap. Dec. 4959, the plaintiff (Government) relied entirely upon a statement in the consular invoice, but there was no appearance by the importer's counsel. The plaintiff was held to have made out a case, the court citing *United States* v. *Fisher Scientific Co.*, 73 Treas. Dec. 1375, Reap. Dec. 4219 (affirmed in C. A. D. 27, *supra*).

It is most interesting to note that, in Customs Court litigation, little consideration has been given to the applicability of the provisions of title 28, United States Code, section 695, in determining the admissibility in evidence of writings and records. The foregoing section (substantially the same as 28 U: S. C., § 1732, now in effect) provided as follows:

In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of said act, transaction, occurrence, or event, if it shall appear that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term "business" shall include business, profession, occupation, and calling of every kind. (June 20, 1936, ch. 640, § 1, 49 Stat. 1561.)

\*  \*  \*  \*  \*  \*  \*

It is well also to direct attention to the principle that, in the trial of cases, those statutes and rules which favor the reception of evidence should control.

In applying the rules set forth in section 695, *supra*, it has been held that invoices from various wholesalers, agents, and manufacturers found in the place of business of a bankrupt, and which were evidently received in the ordinary course of business, were admissible in evidence in a suit against the bankrupt. *Sampsell* v. *Anches*, 108 F. 2d 945, 955. This same section was considered in the case of *United States* v. *Garvey et al.*, 150 F. 2d 767, and in *Ettelson et al.* v. *Metropolitan Life Insurance Company*, 164 F. 2d 660. In the case of *Harper* v. *United States*, 143 F. 2d 795, the court upheld the admission of invoices in evidence in a criminal case. In *Stegemann* v. *Miami Beach Boat Slips, Inc.*, 213 F. 2d 561, the admission of invoices in evidence was also sustained.

In setting forth the procedure to be followed by a single judge in a reappraisement appeal, Congress has said that "His determination shall be made from the evidence in the record and that adduced at the hearing \* \* \*." (28 U. S. C. § 2631.) If any meaning is to be given to the words "evidence in the record," it seems that Congress intended that the official files in each case should be considered as evidence by

the court. Undoubtedly, considerable confusion has been caused through the failure to distinguish between the admissibility of evidence and the weight to be given to any particular evidence in the final determination of the case. It may well be that certain records or other evidence held by the court to be admissible may, by explanation and attack, be rendered substantially, if not wholly, valueless in the final determination of the issues, but that does not mitigate against the admission of the record in the first place, unless the explanations and attacks come before the offer of the evidence is made.

Under all the facts in this case, and in accordance with the statutes and decisions hereinbefore considered, I am of the opinion that the consular invoice, referred to in plaintiff's exhibit 1 and found with the official papers herein, was properly received in evidence, and that it is entitled to be given some weight in the decision of this case, since the defendant made no attempt whatever to attack the correctness of the invoice, or to explain any of its provisions. This document shows that the total appraised value of the woolen rugs in question contains an item referred to as a 10 per centum commission, in addition to the value of 29 cents per square foot based on the invoiced price, which was likewise the entered value. However, I doubt that the consular invoice standing by itself constitutes sufficient evidence to establish that the 10 per centum referred to was a buying commission, although it is described as such on the face of the invoice and on the entry. But, coupled with the affidavit of J. C. Liu and the testimony of Mr. Meier, I am of the opinion that the evidence does show that the 10 per centum was a nondutiable buying commission paid by the buyer. While the affidavit of Mr. Liu might probably have been more specific in certain particulars, yet it is, in my opinion, sufficient to show that Mr. Liu, representing Chen Te Hsing, was familiar with the importations under consideration and that he represented Chen Te Hsing as a commissionaire for the plaintiff-importer. Furthermore, it shows that, in performing certain services for the importer, including negotiating with suppliers on the basis of samples, taking delivery of, inspecting and packing merchandise, and performing other duties, he acted as a representative of the buyer and not as an agent of the seller in disposing of the merchandise in question. This affidavit, coupled with the testimony of Mr. Meier concerning the manner in which Meier & Frank Co., Inc., dealt with its commissionaire in China, provides sufficient evidence to overcome the presumption of correctness upon which the Government rests its entire case. Furthermore, I am of the opinion that Mr. Liu's affidavit contains certain evidentiary facts and is, therefore, quite different from the affidavits containing only ultimate facts, which were involved in *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, and *Kobe Import Co.* v. *United States*,

42 C. C. P. A. (Customs) 194, C. A. D. 593, cited by the defendant. The situation before us is substantially the same as in the case of *The American Import Co.* v. *United States, supra.*

Upon the entire record before me, I find as facts:

1. That the merchandise consisted of certain woolen rugs, exported from China on or about June 2, 1950.

2. That the only item of the appraisement challenged and the issue to which this case is limited is the correctness of the inclusion in the appraiser's return of value of an item of 10 per centum.

3. That the said 10 per centum item represented a buying commission paid to the shipper, Chen Te Hsing, as commissionaire.

4. That the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of China, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, was, as to each item, the invoiced unit value, plus packing.

5. That, if such or similar merchandise was, at the time of exportation of such merchandise, freely offered for sale for home consumption in China, the market value or price was no higher than as stated in finding No. 4.

I conclude as matters of law:

1. That export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the correct basis of value for the merchandise at bar, and

2. That such value is as stated in finding No. 4.